FILED



1 BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2 Andrew S. Friedman (seeking Pro Hac Vice)
3 Wendy J. Harrison (CA Bar No. 151090)
2901 North Central Avenue, Suite 1000
4 Phoenix, Arizona 85012
5 (602) 274-1100

6 CHAVEZ & GERTLER, L.L.P.
Mark A. Chavez (CA SBN 90858)
7 42 Miller Avenue
8 Mill Valley, California 94941
(415) 381-5599
9

10 LERACH, COUGHLIN, STOIA, GELLER
RUDMAN & ROBBINS, LLP
11 John Stoia (CA SBN 141757)
Ted Pintar (CA SBN131372)
12 655 W. Broadway, Suite 1900
San Diego, CA 92101
13 (619) 231-1058

2007 AUG 21 PM 3:41

I hereby attest and certify on _3-3-08_ that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY CLERK

1079

14 UNITED STATES DISTRICT COURT
15 CENTRAL DISTRICT OF CALIFORNIA

16 SACV07-984 CJC (RNBx)

17 VICTOR H. SANCHEZ,                          ) No. _____

18           Plaintiff,                        )
                                               ) CLASS ACTION
19
                                               ) CLASS ACTION COMPLAINT FOR:
20     v.
                                               )
21 ARGENT MORTGAGE COMPANY,                    ) 1. Violations of the Equal Credit
   LLC,                                        )    Opportunity Act; 15 U.S.C. § 1691
22                                             ) 2. Violations of the Fair Housing Act; 42
           Defendant.                          )    U.S.C. § 3601
23                                             )
                                               ) 3. Violations of the Civil Rights Act, 42
24                                             )    U.S.C. §1981; and
                                               )
25                                             ) 4. Violations of the Civil Rights Act, 42
                                               )    U.S.C. §1982.
26
27                                             ) DEMAND FOR JURY TRIAL
28

DOCKETED ON CM

BY                    074

- 1 -

1      1.     Plaintiff Victor H. Sanchez ("Plaintiff"), by and through his attorneys, brings

2    this action against Argent Mortgage Company, LLC (referred to herein as "Argent" or

3    "Defendant") seeking redress for racially discriminatory lending practices under the Equal

4    Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"); the Fair Housing Act, 42

5    U.S.C. § 3601 et seq. ("FHA"), and the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, on

6    behalf of himself and all others similarly situated.

7                                    **INTRODUCTION**

8      2.     This class action challenges Defendant Argent's racially discriminatory

9    mortgage lending practices. Defendant Argent has engaged in both intentional and disparate

10    impact discrimination through its development and implementation of mortgage pricing

11    policies and procedures that provide financial incentives to its authorized mortgage brokers

12    and correspondent lenders to make subjective decisions to increase interest rates and charge

13    additional fees and costs to minority borrowers.

14      3.    Defendant Argent's authorized mortgage brokers and correspondent lenders

15    are given discretion – and actually encouraged and incentivized – to increase interest rates

16    and charge additional fees to certain borrowers. These policies directly lead to minorities

17    receiving home loans with higher interest rates and higher fees and costs than similarly

18    situated non-minority borrowers.

19      4.     As used in this Complaint, "minority" or "minorities" shall refer to all non-

20    Caucasians and other minority racial groups protected under 42 U.S.C. §§ 1981, 1982, and

21    3604, and 15 U.S.C. § 1691.

22      5.     Plaintiff brings this action on behalf of all minorities (hereinafter collectively

23    referred to as the "Class" or "members of the Class") who have entered into residential

24    mortgage loan contracts that were financed or purchased by Defendant Argent, and who have

25    been subjected to racial discrimination.

26      6.     Plaintiff seeks injunctive, declaratory, and equitable relief, and other remedies

27    for Defendant's racially discriminatory conduct.

28

-2-

1

**JURISDICTION AND VENUE**

2          7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives this

3   Court original jurisdiction over civil actions arising under federal law.

4          8.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a

5   substantial part of the events giving rise to Plaintiff's and the Class's claims occurred in this

6   District. Defendant's corporate headquarters are located in this District, and the practices

7   complained of herein were formulated and structured in this District.

8

**PARTIES**

9          9.    Plaintiff Victor H. Sanchez is a Latino homeowner who resides at 829 E.

10  Marguerita Ave., Phoenix, AZ 85040.

11          10.   Defendant Argent is a mortgage lender whose principal place of business at

12  2603 Main St., Irvine, CA 92614.

13

**FACTS**

14  **I.    HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE LENDING**

15          11.   Racial discrimination in America's mortgage lending industry has a long

16  legacy. As this Complaint attests, that unfortunate history continues to this day due to

17  discriminatory treatment of minority borrowers by mortgage banks such as Defendant

18  Argent.

19          12.   The Joint Center for Housing Studies at Harvard University conducted a study

20  in 2005 called "The Dual Mortgage Market: The Persistence of Discrimination in Mortgage

21  Lending," which summarizes that history well. It states that "[i]n the immediate post-World

22  War II period, racial discrimination in mortgage lending was easy to spot. From government-

23  sponsored racial covenants in the Federal Housing Administration (FHA) guidelines to the

24  redlining practices of private mortgage lenders and financial institutions, minorities were

25  denied access to home mortgages in ways that severely limited their ability to purchase a

26  home. Today, mortgage lending discrimination is more subtle. . . . [M]ore than three

27  decades after the enactment of national fair lending legislation, minority consumers continue

28

1  to have less-than-equal access to loans at the best price and on the best terms that their credit

2  history, income, and other individual financial considerations merit."

3       13.    The federal Home Mortgage Disclosure Act ("HMDA") requires mortgage

4  lenders to report information about the home loans they process each year. In 2005, lenders

5  reported information on more than 30 million home loan applications pursuant to HMDA. In

6  1989, Congress required lenders to begin disclosing information about mortgage borrowers'

7  race and ethnicity. In 2004, concerned with potential racial discrimination in loan pricing

8  and recognizing that racial or other types of discrimination can occur when loan officers and

9  mortgage brokers have latitude in setting interest rates, the Federal Reserve Board began

10 requiring lenders to also report information concerning rates, points, and fees, charged to

11 borrowers on high-cost loans.

12      14.    According to the Federal Reserve, both 2004 and 2005 HMDA data revealed

13 that "Blacks and Hispanics were more likely . . . to have received higher-priced loans than

14 non-Hispanic whites. . . . [which has] increased concern about the fairness of the lending

15 process." Robert B. Avery, Kenneth P. Brevoort and Glenn B. Canner, "Higher-Priced

16 Home Lending and the 2005 HMDA Data," Federal Reserve Bulletin, A124, A159 (Sept. 18,

17 2006).

18      15.    HMDA data for 2005 shows that "for conventional home-purchase loans, the

19 gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2 percent

20 for non-Hispanic whites, a difference of 37.5 percentage points." Id. at A159. The situation

21 is similar for refinancings, where there is a difference of 28.3 percentage points between

22 blacks and non-Hispanic whites. Id.

23      16.    The Association of Community Organizations for Reform Now (ACORN)

24 released a report entitled "The High Cost of Credit: Disparities in High-priced Refinanced

25 Loans to Minority Homeowners in 125 American Cities," dated September 27, 2005, which

26 found that "[i]n every metropolitan area where at least 50 refinances were made to African-

27 American homeowners, African-Americans were more likely to receive a high-cost loan than

28 White homeowners."

17.    Defendant Argent's lending practices are of a piece with the foregoing history.

II.    **PAST AS PROLOGUE: DEFENDANT ARGENT'S DISCRIMINATORY LENDING POLICIES**

A.    **DEFENDANT ARGENT'S RELATIONSHIPS WITH ITS MORTGAGE BROKERS AND CORRESPONDENT LENDERS**

18.    As Defendant Argent's Internet site explains, "wholesale lenders qualify, approve, and fund loans submitted by brokers" rather than through retail banking branches.(www.argentmortgage.com/amcontent/media/docs/forms/FairMortgageLendingPractices.pdf (last viewed August 7, 2007). Defendant Argent originates and funds mortgage loans both through brokers and through a network of correspondent lenders. Mortgage brokers and correspondent lenders that work with Defendant Argent broker and fund loans in collaboration with Defendant Argent and in conformance with Defendant Argent's credit-pricing policies and procedures.

19.    Defendant Argent has followed – and continues to follow – discretionary loan pricing procedures that cause minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-minority borrowers. Defendant Argent has intentionally discriminated against Plaintiff and Class Members through these policies and procedures – systematically giving them mortgage loans with less favorable conditions than were given to similarly situated non-minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct result of Defendant Argent's business model and loan-funding practices.

20.    Defendant Argent states on its Internet site that its authorized brokers "may receive part or all of their compensation directly from [Defendant Argent] based on the interest rate agreed to between the borrower and his/her broker." (https://www.argentmortgage.com/amcontent/media/docs/forms/FairMortgageLendingPractices.pdf (last viewed August 7, 2007).) In other words, Defendant Argent's authorized brokers

1  receive more compensation from Defendant Argent when they steer their clients into Argent

2  loans with higher interest rates.

3      21.  Defendant Argent allows authorized brokers to take up to 5% of a given

4  client's loan value in compensation at closing based on the interest rate the broker convinces

5  that client to accept. Id. Defendant Argent permits its brokers to allocate that compensation

6  amount among various mortgage-related fees – including broker fees, closing fees, yield

7  spread premiums, premium yield adjustments, premium yield rebates, broker application

8  fees, broker underwriting fees, and broker processing fees. Id.

9      22.  Defendant Argent intentionally and actively implements this discretionary

10  credit-pricing policy in a variety of ways.

11      23.  First, Defendant Argent actively educates its broker force in Defendant

12  Argent's credit policies and procedures. Defendant Argent conducts a training program for

13  its brokers called "Argent University," which includes courses such as "Closing Principles

14  and Procedures," "Understanding Subprime Lending," and "HMDA: What Is It?"

15  (https://www.argentmortgage.com/argentuniversity/index.html (last viewed on August 7,

16  2007).)

17      24.  Defendant Argent also actively directs its brokers in marketing Defendant

18  Argent's loans. Defendant Argent collaborates with its authorized brokers in crafting

19  advertisements and "email campaigns" and supplies its brokers with a "lead generation

20  tools," including one known as "The Big Sweeps program."

21  (https://www.argentmortgage.com/marketing-tools/index.html (last viewed on August 7,

22  2007).) Through "The Big Sweeps" program, Defendant Argent works with brokers to

23  "[c]reate your own personalized sweepstakes and offer your customers and prospects a

24  chance to win incredible prizes." Id.

25      25.  Defendant Argent also evaluates and monitors its authorized brokers to ensure

26  that their loan brokering complies with Defendant Argent's loan pricing policies and

27  procedures. Id. This evaluation and monitoring "is designed to ensure approved brokers are

28  meeting [Defendant Argent's] standards" – including Defendant Argent's underwriting

1  requirements and its lending policies. Id. Defendant Argent performs loan-level reviews of

2  its brokers pursuant to this policy, and also annually reviews brokers to ensure that their

3  loans comply with Defendant Argent's loan-pricing policies.

4      26.    Defendant Argent's wholesale business model, in other words, turns on close

5  collaboration with Defendant Argent's broker force. Defendant Argent for that reason

6  allows – and indeed directs – its authorized mortgage brokers and correspondent lenders

7  subjectively to charge certain loan applicants yield spread premiums and other discretionary

8  charges, including minority loan applicants.

9      27.    This pattern of discrimination cannot be justified by business necessity, and

10  could be avoided through the use of alternative policies and procedures that have less

11  discriminatory impact and no less business efficacy.

## B. DEFENDANT ARGENT'S DISCRETIONARY CREDIT PRICING SYSTEM: DESIGNED TO DISCRIMINATE

14      28.    Defendant Argent discriminates, through its authorized mortgage brokers.

15  Authorized mortgage brokers act as Defendant Argent's agents in originating mortgage

16  loans. Authorized mortgage brokers enter into agreements with Defendant Argent to accept

17  loan applications on behalf of Defendant Argent; communicate to loan applicants financing

18  terms and rates set by Defendant Argent; tell loan applicants about Defendant Argent's

19  various financing options; and ultimately originate mortgage loans funded by Defendant

20  Argent using Defendant Argent's forms and in accordance with Defendant Argent's policies

21  and procedures.

22      29.    Likewise with Defendant Argent's authorized correspondent lenders, who also

23  act as Defendant Argent's agents in originating loans. Correspondent mortgage lenders that

24  work with Defendant Argent make loans in accordance with Defendant Argent's credit

25  policies and procedures. Defendant Argent funds these loans before or shortly after they go

26  to closing.

27      30.    Defendant Argent, then, funds loans originated by its authorized mortgage

28  brokers and correspondent lenders, sets the terms and conditions of credit on those loans; and

1  shoulders part or all of the risk on such loans. Defendant Argent actively and intentionally

2  enforces its credit policies through its authorized mortgage brokers and correspondent

3  lenders in a variety of ways. Among other things, Defendant Argent supplies its

4  correspondent lenders and mortgage brokers with an array of loan-related forms and

5  agreements, including loan contracts, loan applications, and instructions on completing loan

6  applications and contracts. And, as noted above, Argent actively trains its authorized brokers

7  to follow Argent's policies and procedures, and reinforces that training with marketing

8  support and active monitoring and performance evaluation.

9      31.    Once a loan applicant has provided credit information to Defendant Argent

10  through a mortgage broker or correspondent lender, Defendant Argent performs an initially

11  objective credit analysis. Defendant Argent at this point evaluates numerous risk-related

12  credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories,

13  debt ratios, bankruptcies, automobile repossessions, prior foreclosures, payment histories,

14  credit scores, and the like.

15      32.    Defendant Argent derives a risk-based financing rate from these objective

16  factors, which Defendant Argent and others in the mortgage industry simply call the "par

17  rate." (Defendant Argent's brokers and correspondent lenders can also estimate the par rates

18  by referring to an applicant's credit bureau-determined credit score.)

19      33.    Although Defendant Argent's initial analysis applies objective criteria to

20  calculate this risk-related interest rate, Defendant Argent as a matter of policy and procedure,

21  authorizes its brokers and correspondent lenders to mark up that rate later and also impose

22  additional non-risk-based charges, including yield spread premium, and other discretionary

23  fees. Defendant Argent regularly communicates applicable par rates, authorized yield spread

24  premiums, and other discretionary fees to its brokers and correspondent lenders via "rate

25  sheets" and other communications.

26      34.    Defendant Argent gives its authorized mortgage brokers and correspondent

27  lenders discretion to impose yield spread premiums and other subjective fees on borrowers.

28  When borrowers pay yield spread premiums, Argent shares in additional income generated

1 by the premium because the yield spread premium-affected borrower is locked into a higher
2 interest rate going forward on their Argent loan than they would be if they had been placed
3 in a par rate loan without a yield spread premium.

4       35.    Defendant Argent's borrowers pay yield spread premiums and other
5 discretionary fees that inflate their finance charges not knowing that a portion of their
6 finance charges are non-risk-related.

7       36.    Defendant Argent's policies and procedures concerning the assessment of yield
8 spread premiums and other discretionary fees cause persons with identical or similar credit
9 scores to pay differing amounts for obtaining credit. Such subjective loan pricing - which by
10 design imposes differing finance charges on persons with the same or similar credit profiles -
11 disparately impacts Defendant Argent's minority borrowers.

12      37.    While Defendant Argent's use of a common credit policy for all loan
13 applicants might appear to be facially neutral, Defendant Argent's use of yield spread
14 premiums and other discretionary fees disproportionately and adversely affects minorities
15 (relative to similarly situated non-minorities). Defendant Argent's credit policy causes
16 minorities to pay disparately more discretionary finance charges than similarly situated non-
17 minorities. As the HMDA data cited herein indicates, minorities, after controlling for credit
18 risk, are substantially more likely than similarly situated non-minorities to pay such charges.

19      38.    Defendant Argent's credit policy is in fact intentionally discriminatory. As
20 described above, Defendant Argent's credit pricing policy by design discriminates against
21 minority borrowers.

22 **III.   DEFENDANT ARGENT IMPOSED DISCRIMINATORY FEES ON**
23       **PLAINTIFF**

24      39.    Defendant Argent's discriminatory credit pricing policy directly damaged
25 Plaintiff. On or about March 8, 2005, Plaintiff refinanced his home with a mortgage loan
26 issued by Defendant Argent in the amount of $99,000. Allegro Financial Corporation
27 ("Allegro"), was the mortgage broker on Plaintiff's home refinancing.

28

1    40.    According to his HUD-1 closing statement (attached hereto as Exhibit 1), a

2  yield spread premium in the amount of $990 was assessed on Plaintiff's loan on a "POC"

3  basis (i.e., paid outside of closing) by Defendant Argent.  Plaintiff also paid a $3,960

4  origination fee (i.e., 4% of the amount of Plaintiff's Argent) to his broker, Allegro, in

5  connection with his loan. This discretionary origination fee and the yield spread premium

6  were assessed pursuant to Defendant Argent's credit pricing policy.

7    41.    Allegro and Defendant Argent knew that Plaintiff was a minority borrower.

8  The Allegro employee who brokered Plaintiff's Argent loan in conformance with Defendant

9  Argent's discriminatory credit pricing policy, Angelica Asenceo, was an acquaintance of

10  Plaintiff's family before Plaintiff's refinance transaction and thus was well aware of

11  Plaintiff's Latino ethnicity.

12    42.    As a result of Defendant Argent's discriminatory conduct, Plaintiff received a

13  loan on worse terms with higher costs than similarly situated non-minority borrowers.

14                    **CLASS ACTION ALLEGATIONS**

15    43.    Plaintiff repeats and re-alleges each allegation above as if set forth herein in

16  full.

17    44.    This class action is brought pursuant to ECOA, the FHA and the Civil Rights

18  Act by Plaintiff on behalf of himself and all minority borrowers (the "Class") who entered

19  into residential mortgage loan contracts that were financed or purchased by Defendant

20  Argent and who were harmed by Defendant's discriminatory conduct.

21    45.    Plaintiff sues on his own behalf, and on behalf of a class of persons under Rule

22  23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

23    46.    Plaintiff does not know the exact size of the Class or identities of the members

24  of the Class, since that information is in the exclusive control of Defendant Argent. Plaintiff

25  believes that the Class includes many thousands, or tens of thousands of individuals, who are

26  geographically dispersed throughout the United States. Therefore, the Class is so numerous

27  that joinder of all members is impracticable.

28

47.    All members of the Class have been subject to and affected by Defendant Argent's practice of assessing yield spread premiums and other discretionary fees on mortgage loans. There are questions of law and fact that are common to the Class, and that predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

a.    the nature and scope of Defendant Argent's policies and procedures concerning the assessment of yield spread premiums and other discretionary fees on mortgage loans it funds;

b.    whether Defendant Argent discriminated against Class Members by charging them higher interest, fees, and costs, than Defendant Argent charges similarly situated non-minority borrowers.

c.    whether Defendant Argent's intent in its discriminatory policies and procedures was racially motivated;

d.    whether Defendant Argent can articulate any legitimate non-discriminatory reason for its policies and procedures;

e.    whether Defendant Argent and its subsidiaries are creditors under the ECOA because, in the ordinary course of business, they participate in the decision of whether or not to extend credit to consumers;

f.    whether Defendant Argent's policies and procedures regarding yield spread premiums and other discretionary fees have a disparate impact on minority borrowers;

g.    whether Defendant Argent has any business justification for its policies and procedures.

h.    whether there is a less discriminatory alternative to these policies and procedures;

   i.  whether Defendant Argent devised and deployed a scheme or common course of conduct that acted to deceive Plaintiff and members of the Class;

   j.  whether the Court can enter declaratory and injunctive relief; and

   k.  the proper measure of disgorgement or monetary relief.

48. Plaintiff's claims are typical of the claims of the Class, and do not conflict with the interests of any other members of the Class in that both Plaintiff, and the other members of the Class, were subjected to the same yield spread premiums and other discretionary fees that have disproportionately affected minority borrowers.

49. Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff is committed to vigorous prosecution of the Class's claims, and has retained attorneys who have extensive experience in consumer protection and credit discrimination actions.

50. Defendant Argent has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

51. A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION AND EQUITABLE TOLLING

52. Plaintiff and Class Members did not know, and could not reasonably have known, that they would receive from Defendant Argent mortgage loans with worse terms and higher costs and fees than non-minorities. Their claims did not accrue until shortly before the filing of this action.

53. Defendant Argent's discriminatory conduct was inherently self-concealing. Defendant Argent knew that Plaintiff and Class Members could not determine the relationship between the terms, fees, and costs of their loans to those available to non-

1   minorities. Defendant Argent knew that the terms, fees, and costs provided to minorities,

2   unbeknownst to them, were substantially worse than the loans provided to non-minorities.

3      54.   Defendant Argent has not released or provided information about its

4   discrimination against Plaintiff and Class Members, and has actively and fraudulently

5   concealed its discriminatory practices.

6      55.   As a result of the foregoing, Plaintiff and Class Members in the exercise of due

7   diligence could not have reasonably discovered the discriminatory practices, and did not do

8   so until just recently. For the reasons alleged above, the members of the Class still do not

9   know that they have been and continue to be injured by Defendant Argent's discriminatory

10   conduct.

11      56.   Defendant Argent's discriminatory conduct is continuing in nature, and

12   Defendant Argent has committed discriminatory acts throughout the limitations period.

13      57.   There is a substantial nexus between the acts of discrimination occurring

14   within the limitation periods prior to filing suit and the acts of discrimination before that

15   time. The acts involve the same type of discrimination and are recurring, not isolated events.

16      58.   Defendant Argent specifically misled Plaintiff and Class Members into

17   believing that the mortgage-related terms, fees, and costs they were offered were fair,

18   reasonable, and the same as offered to non-minorities, and took steps to conceal its

19   fraudulent and unfair conduct.

20      59.   The statute of limitations applicable to any claims that Plaintiff or other Class

21   Members have brought or could bring as a result of the unlawful and fraudulent concealment

22   and course of conduct described herein, has been tolled as a result of Defendant Argent's

23   fraudulent concealment. In addition, Plaintiff and the Class did not and could not have

24   discovered their causes of action until the time alleged below, thereby tolling any applicable

25   statute of limitations.

26

27

28

# COUNT I

## RACIAL DISCRIMINATION (42 U.S.C. § 1981)

60. Plaintiff repeats, re-alleges, and incorporates the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61. Defendant Argent intentionally discriminated against Plaintiff and Class Members by charging higher interest rates and other fees and costs than were charged to similarly situated non-minority borrowers.

62. Defendant Argent unlawfully discriminated against Plaintiff and Class Members in (i) formation of contracts, (ii) making, performance, modification, and termination of contracts, (iii) the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship, and/or (iv) conduct that interferes with the right to establish and enforce contract obligations.

63. Defendant Argent's actions violate 42 U.S.C. § 1981, as well as the rights of Plaintiff and the Class under the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States.

64. Plaintiff and Class Members are entitled to injunctive and declaratory relief and damages, or make whole equitable relief as a result of Defendant Argent's discriminatory conduct.

65. At no time has Defendant Argent undertaken corrective action to ameliorate its racially discriminatory practices. Defendant Argent continues to reap the profits of its discriminatory practices and continues to discriminate. Defendant Argent's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Argent has acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class. As a result, Plaintiff and members of the Class are entitled to punitive damages.

## COUNT II

## RACIAL DISCRIMINATION (42 U.S.C. § 1982)

66.    Plaintiff repeats, re-alleges, and incorporates the allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67.    Section 42 U.S.C. §1982 provides that all citizens of the United States "shall have the same right, in every State and Territory, as is enjoyed by White citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

68.    Defendant Argent has discriminated against Plaintiff and the Class with respect to their home mortgage loans by charging Plaintiff and the Class higher interest rates and other discretionary fees than Defendant Argent has charged similarly situated non-minority consumers. As a result of Defendant Argent's conduct, Plaintiff and the Class have not had the same right as Caucasians to inherit, purchase, sell, hold, and convey real property. Defendant Argent has thereby violated 42 U.S.C. § 1982.

69.    Defendant Argent's violation of 42 U.S.C. § 1982 was intentional and malicious.

70.    As a proximate result of Defendant Argent's violation of 42 U.S.C. § 1982, Plaintiff and members of the Class have been injured, and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief. In addition, Defendant Argent's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Argent acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class. As a result, Plaintiff and members of the Class are entitled to punitive damages.

## COUNT III

## VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. §§ 3601 – 3619)

71.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 70 above as if fully set forth herein.

72. Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA. 42 U.S.C. § 3605(b).

73. By imposing higher interest rates and other discretionary fees on residential mortgage loans to Plaintiff and Class Members than it imposed on non-minority mortgage borrowers, Defendant Argent has discriminated against Plaintiff and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA. 42 U.S.C. § 3605(a).

74. In addition, Defendant Argent's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiff and Class Members.

75. As a proximate result of Defendant Argent's violation of 42 U.S.C. § 3605, Plaintiff and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

76. In addition, Defendant Argent's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Argent acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class. As a result, Plaintiff and members of the Class are entitled to punitive damages.

77. Moreover, Defendant Argent continues to discriminate in violation of the FHA against members of the Class every time Defendant Argent provides a home mortgage loan as described herein. If not enjoined from such violation by the Court, Defendant Argent will continue to engage in conduct that disregards the rights of Plaintiff and members of the Class, and cause Plaintiff and members of the Class irreparable injury for which there is no adequate remedy at law. 42 U.S.C. § 3613(c).

78. Plaintiff and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant Argent's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

## COUNT IV
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
## (15 U.S.C. §§ 1691 - 1691f)

79. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 78 above as if fully set forth herein.

80. Defendant Argent engages in credit transactions through its offering, granting, and purchasing of residential mortgage loans.

81. By imposing higher interest rates and other discretionary fees on residential mortgage loans to Plaintiff and Class Members than it imposed on non-minority mortgage borrowers, Defendant Argent has discriminated against Plaintiff and members of the Class with respect to a credit transaction on the basis of race in violation of the ECOA. 15 U.S.C. § 1691(a).

82. In addition, Defendant Argent's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, have a disparate impact on Plaintiff and Class Members.

83. As a proximate result of Defendant Argent's violation of 15 U.S.C. § 1691, Plaintiff and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

84. In addition, Defendant Argent's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Argent acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class. As a result, Plaintiff and members of the Class are entitled to punitive damages.

85.   Moreover, Defendant Argent continues to discriminate in violation of the ECOA against Class Members every time Defendant Argent provides a home mortgage loan as described herein. If not enjoined from such violation by the Court, Defendant Argent will continue to engage in conduct that disregards the rights of Plaintiff and members of the Class, and cause Plaintiff and members of the Class irreparable injury for which there is no adequate remedy at law. 15 U.S.C. § 1691(e).

86.   Plaintiff and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant Argent's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

### REQUESTS FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff requests the following relief:

A.   An order determining that the action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   A Judgment awarding Plaintiff and Class Members costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

C.   A Judgment granting extraordinary equitable and/or injunctive relief as permitted by law or equity, including rescission, restitution, reformation, attaching, impounding, or imposing a constructive trust upon, or otherwise restricting, the proceeds of Defendant's ill-gotten funds to ensure that Plaintiff and Class Members have an effective remedy;

D.   A Judgment awarding damages, including punitive damages, to Plaintiff and Class Members;

E.   A Judgment granting declaratory and injunctive relief and all relief that flows from such injunctive and declaratory relief; and

F.   A Judgment or other Order granting such other and further relief as the Court deems just and proper including, but not limited to, recessionary relief and reformation.

1 **JURY TRIAL DEMANDED**

2    87.   Plaintiff demands a trial by jury on all issues so triable.

3

4    DATED this ___ day of August, 2007.

5

6                         BONNETT, FAIRBOURN, FRIEDMAN, & BALINT, P.C.

7

8                         Andrew S. Friedman

9                         Wendy J. Harrison
                        2901 North Central Avenue, Suite 1000

10                         Phoenix, Arizona 85012

11

12                         CHAVEZ & GERTLER, L.L.P.
                        Mark A. Chavez

13                         42 Miller Avenue
                        Mill Valley, California 94941

14                         LERACH COUGHLIN STOIA GELLER

15                           RUDMAN & ROBBINS
                        John J. Stoia, Jr. (141757)

16                         Theodore J. Pintar (131372)

17                         655 West Broadway, Suite 1900
                        San Diego, CA 92101

18                         Telephone: (619) 231-1058
                        *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**SETTLEMENT STATEMENT**

Camelback Title Agency, LLC
2222 E. Camelback Road
Suite 250
Phoenix, AZ 85016

PRE-AUDIT figures are subject to change

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "P.O.C." were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER: Victor H. Sanchez

ADDRESS OF BORROWER: 529 E. Margaret
Phoenix, AZ 85041

E. NAME OF SELLER:

ADDRESS OF SELLER:

| | | |
|---|---|---|
| F. NAME OF LENDER: | Argent Mortgage | |
| ADDRESS OF LENDER: | 2600 Main Street | |
| | Irvine, CA 92614 | |
| G. PROPERTY LOCATION: | 529 E. Margaret | |
| | Phoenix, AZ 85041 | |
| | Maricopa | |
| | Lot(s) 3, of Roosevelt Square, Map Book 22, Map Page 4 | |
| H. SETTLEMENT AGENT: | Camelback Title Agency, LLC | |
| PLACE OF SETTLEMENT: | 2222 E. Camelback Road, Suite 250, Phoenix, AZ 85016 | |

**8. TYPE OF LOAN**
A. ☐ VA   B. ☐ FMHA   C. ☐ CONV. INS.   D. ☐ FHA   E. ☐ CONV. INS.

6. ESCROW FILE NUMBER: 09008116-045 CP
8. MORTGAGE INSURANCE CASE NUMBER:
7. LOAN NUMBER: 0075844114

| L. SETTLEMENT DATE: | PRORATION DATE: | FUNDING DATE: |
|---|---|---|

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 7,925.02 | 403. | |
| 104. Payoff to M&T Mortgage | 65,671.95 | 404. | |
| 105. | | 405. | |
| **Adjustments For items Paid By Seller in Advance:** | | **Adjustments For items Paid By Seller In Advance:** | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. HOA | | 409. HOA | |
| 110. SEWER | | 410. SEWER | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due from borrower | 73,597.97 | 420. Gross Amount Due to Seller | |
| **200. Amounts Paid by or in behalf of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 99,000.00 | 502. Settlement charges to Seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments For items Unpaid By Seller:** | | **Adjustments For items Unpaid By Seller:** | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. Appraisal Reimbursement | | 516. Appraisal Reimbursement | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 99,000.00 | 520. Total Reductions In Amount Due Seller | |
| **300. Cash at Settlement From/To Borrower:** | | **600. Cash At Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 73,597.97 | 601. Gross amount due to Seller (line 420) | |
| 302. Less amount paid by/for Borrower (line 220) | 99,000.00 | 602. Less reductions in amount due Seller (line 520) | |
| 303. Cash TO Borrower | 25,402.03 | 603. Cash TO/FROM Seller | 0.00 |

dc.rpt (12/17/2003)

Printed by Cathy Pace on 03/06/2005 at 02:33:12 PM

**L. SETTLEMENT CHARGES:**

ESCROW FILE NUMBER: 0048acbb-0

| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Sales/Broker's Commission:** | | | |
| Based on Price $ @ %= | | | |
| Division of Commission (line 700) follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| $ | to | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable in Connection With Loan:** | | | |
| 801. Loan Origination Fee 4.0% to ALLEGRO FINANCIAL | | 3,960.00 | |
| 802. Loan Discount Fee | | | |
| 803. Appraisal Fee to Ryan Sparks | | 385.00 | |
| 804. Credit Report | | | |
| 805. Lenders Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. YSP pd by Lender to ALLEGRO FINANCIAL (Lender $990.00 POC) | | | |
| 809. Tax Related Service Fee to Argent Mortgage | | 70.00 | |
| 810. Flood Search Fee to Argent Mortgage | | 8.00 | |
| 811. **See attached for breakdown | | 1,270.00 | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest from 03/14/05 to 04/01/05 @$20.48/day (18 days) | | 368.64 | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium for 1 YR Year(s) to Mickey Clayton Insurance | | 540.00 | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual Assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. AGGREGATE ADJUSTMENT months @$ | | | |
| **1100. Title Charges:** | | | |
| 1101. Settlement or closing fee to Camelback Title Agency, LLC | | 200.00 | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | | | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage $ 99,000.00 | | 602.00 | |
| 1110. Owner's coverage $ | | | |
| Lender's coverage $ | | | |
| Lender's coverage $ | | | |
| 1111. 3R, 6, 8.1 Endorsements to Camelback Title Agency, LLC | | 80.00 | |
| 1112. Reconveyance Fee to Camelback Title Agency, LLC | | 75.00 | |
| 1113. **See attached for breakdown | | 105.00 | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees: Deeds Mortgage $ 25.00 Release $ | | 25.00 | |
| 1202. City/County tax/stamps | | | |
| 1203. State tax/stamps | | | |
| 1204. City Transfer Tax | | | |
| 1205. County Transfer Tax | | | |
| 1206. Electronic Recording Fee to Camelback Title Agency, LLC | | 15.00 | |
| 1207. Record Warranty Deed to Camelback Title Agency, LLC | | 15.00 | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection | | | |
| 1303. 2nd 1/2 2004 Taxes to Maricopa County Treasurer | | 277.38 | |
| 1304. Payoff to Westlake Financial | | 141.00 | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1400. Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | | 7,925.02 | 0.00 |

hudc.rpt (12/17/2003)

Printed by Cathy Pace on 03/08/2005 at 02:53:32 PM

## BREAKDOWN OF NEW LOANS

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| Argent Mortgage, 2005 Main Street, Irvine, CA 92614, Loan# 0073544114 | 99,000.00 | |
| Total of New Loans. | 99,000.00 | |

## HUD 800 ITEMS PAYABLE IN CONNECTION WITH LOAN :

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 812. Warehouse Fee to Argent Mortgage | 175.00 | |
| 813. Application Fee to ALLEGRO FINANCIAL | 125.00 | |
| 814. Processing Fee to ALLEGRO FINANCIAL | 595.00 | |
| 815. Underwriting Fee to Argent Mortgage | 375.00 | |
| Total as shown on HUD Page 2 Line 811. | 1,270.00 | |

## HUD 1115 DETAILED BREAKDOWN OF TITLE CHARGES.

| Description | Buyer Amount | Seller Amount |
|---|---|---|
| 1114. Overnight Delivery to Camelback Title Agency, LLC | 20.00 | |
| 1115. Courier Fee to Camelback Title Agency, LLC | 20.00 | |
| 1116. Wire Transfer to Camelback Title Agency, LLC | 40.00 | |
| 1117. Email Doc Fee to Camelback Title Agency, LLC | 28.00 | |
| Total as shown on HUD Page 2 Line #1113. | 108.00 | |